**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SIERRA FOREST LEGACY, a project of the TIDES CENTER; DEFENDERS OF WILDLIFE; and CENTER FOR BIOLOGICAL DIVERSITY, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. FISH & WILDLIFE SERVICE; DAVID BERNHARDT, in his capacity as Secretary of the Interior; and AURELIA SKIPWITH, in her capacity as Director of the U.S. Fish & Wildlife Service, <br><br> Defendants. | Case No. 20-cv-05800-BLF <br><br> **ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE; AND GRANTING MOTION TO INTERVENE** <br><br> [Re: ECF 16, 25] |

This action challenges the determination of the U.S. Fish & Wildlife Service ("Service") that the California spotted owl is not entitled to protection as an endangered species or a threatened species under the Endangered Species Act, 16 U.S.C. § 1531 *et seq*. *See* 12-Month Finding for the California Spotted Owl ("12-Month Finding"), 84 Fed. Reg. 60371, 60372 (Nov. 8, 2019). Plaintiffs are non-profit organizations Sierra Forest Legacy, a project of the Tides Center; Defenders of Wildlife; and Center for Biological Diversity. Plaintiffs sue the Service, its director, and the Secretary of the Interior, seeking to set aside the Service's determination.

This order addresses (1) Defendants' motion to transfer venue to the Eastern District of California, which is opposed by Plaintiffs, and (2) a motion to intervene filed by the Coalition for Owls, Resources and the Environment ("CORE"), which is unopposed. The motions have been taken under submission without oral argument. *See* Order Submitting Motions, ECF 38.

For the reasons discussed below, the motion to transfer is DENIED and the motion to intervene is GRANTED.

## I. BACKGROUND

The California spotted owl (*Strix occidentalis occidentalis*) "is a subspecies of spotted owl that occurs throughout the Sierra Nevada mountain range in California and Nevada; in southern and coastal California in the Coastal, Transverse, and Peninsular mountain ranges; and in Sierra San Pedro Martir in Baja California Norte, Mexico." 12-Month Finding, 84 Fed. Reg. 60371, 60372. The Service has been petitioned multiple times to list the California spotted owl as an endangered or threatened species under the Endangered Species Act. *See id.* at 60371-72. As relevant here, the Service issued a 12-Month Finding dated November 8, 2019, finding that "listing the California spotted owl as an endangered species or threatened species under the Act is not warranted." *Id*. at 60372.

Plaintiffs challenge that finding in this action, which was filed in the United States District Court for the Northern District of California on August 18, 2020. *See* Compl., ECF 1. Plaintiffs assert two claims under the Administrative Procedure Act, 5 U.S.C. §§ 701-706: (1) Violation of the Endangered Species Act: Illegal Finding that California Spotted Owls Are Not Threatened or Endangered Throughout All of Their Range; and (2) Violation of the Endangered Species Act: Illegal Finding that California Spotted Owls Are Not Threatened or Endangered Throughout Any Significant Portion of Their Range. *See* Compl., ECF 1.

## II. MOTION TO TRANSFER

Defendants move to transfer venue from the United States District Court for the Northern District of California ("Northern District") to the United States District Court for the Eastern District of California ("Eastern District"). Plaintiffs oppose transfer.

### A. Legal Standard

Defendants' motion to transfer is governed by 28 U.S.C. § 1404(a), which provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "[S]ection 1404(a) requires two findings – that the district court is one where the action 'might have been brought' and that the 'convenience of parties and witnesses in the interest of justice' favor

2

transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

The Ninth Circuit has articulated eight non-exclusive factors that district courts may consider in determining whether transfer is appropriate in a particular case: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000). Courts in this district also consider any local interest in the controversy and the relative court congestion and time to trial in each forum. *See Behring Reg'l Ctr. LLC v. Wolf*, No. 20-CV-09263-JSC, 2021 WL 1164839, at *2 (N.D. Cal. Mar. 26, 2021).

The moving party bears the burden of showing that the proposed transferee court is the more appropriate forum. *See Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). The district court has broad discretion to decide whether that burden has been met. *See id.* ("Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge.").

**B.     Discussion**

Applying the standard set forth above, the Court first must determine whether this action might have been brought in the Eastern District, and then it must determine whether Defendants have met their burden to show that the Eastern District is the more appropriate forum.

**1.     This Action Might Have Been Brought in the Eastern District**

A civil action against a federal agency or employee thereof may be brought "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). The substantive work that led to the challenged finding was done at the Service's regional office in Sacramento, California and in the Service's Sacramento Fish and

Wildlife Office, both located in the Eastern District. *See* Drake Decl. ¶ 3, ECF 16-1. Venue thus would be proper in the Eastern District and Plaintiffs do not argue differently.

### 2. Relevant Factors

The Court next considers whether Defendants have met their burden to show that the Eastern District is the more appropriate forum. In this case, many of the *Jones* factors either do not apply or are neutral. There are no "relevant agreements" at issue (factor 1), and Plaintiffs' claims arise under federal law so state familiarity with governing law is not an issue (factor 2). It appears on this record that the costs of litigating in each forum would be similar (factor 6) and that the availability of compulsory process in each forum is identical (factor 7). Moreover, given that this case likely will be resolved by means of cross-motions based on the administrative record, the ease of access to evidence does not appear to be a significant factor (factor 8). *See Sierra Club v. Angelle*, No. 19-CV-03263-RS, 2019 WL 9899513, at *2 (N.D. Cal. Nov. 26, 2019). "Therefore, as in most environmental cases, the issue of which federal district should adjudicate the issues is determined by weighing a plaintiff's choice of forum against the competing interest in having localized controversies decided at home." *Id.* (quotation marks and citations omitted). The *Jones* factors relevant to this inquiry are the plaintiff's choice of forum (factor 3), the respective parties' contacts with the forum (factor 4), and the contacts relating to the plaintiff's cause of action in the chosen forum (factor 5). Also relevant are additional factors considered by this district, in particular local interest in the controversy and relative court congestion.

#### a. Plaintiffs' Choice of Forum

Generally, the plaintiff's choice of forum is accorded substantial deference, and "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). The Ninth Circuit has held that "[i]f the operative facts have not occurred within the forum of original selection *and* that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) (emphasis added). While some courts in this district have interpreted *Pence* to require that both of the conditions articulated therein are met before a

4

plaintiff's choice of forum will be discounted, *see Desert Survivors v. US Dep't of the Interior*, No. 16-CV-01165-JCS, 2016 WL 3844332, at *8 (N.D. Cal. July 15, 2016), others have held that "the degree to which courts defer to a plaintiff's chosen venue is substantially reduced where the forum lacks a significant connection to the activities alleged in the complaint . . . *even if* the plaintiff is a resident of the forum," *Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*, No. C 13-03532 WHA, 2013 WL 6057824, at *2 (N.D. Cal. Nov. 15, 2013).

Defendants argue that both conditions are met here, asserting that the Northern District has no particular interest in the parties or subject matter, because Plaintiffs are not residents of this district, and that the operative facts occurred in the Eastern District. Plaintiffs argue in opposition that the Northern District does have an interest in the parties and subject matter because Sierra Forest Legacy is a resident of the Northern District and all plaintiffs have significant ties to the Northern District. Plaintiffs also argue that operative facts occurred in the Northern District, as the California spotted owl occurs in this district and related litigation occurred in this district.

        **i.**      **Northern District's Interest in Parties or Subject Matter**

There is a factual dispute between the parties whether Plaintiff Sierra Forest Legacy is a resident of the Northern District. Sierra Forest Legacy is a fiscally sponsored project of the Tides Center, which is headquartered in the Northern District. *See* Britting Decl. ¶ 3, ECF 36-8. Defendants argue that the fiscal relationship between the two entities is insufficient to establish that Sierra Forest Legacy is a resident of the Northern District, citing complaints in other cases in which Sierra Forest Legacy described itself as a resident of the Eastern District. *See* Yang Decl. Exh. F ¶ 8, ECF 16-8; Yang Decl. Exh. G. ¶ 5, ECF 16-9. Defendants also point out that Sierra Forest Legacy's website identifies a "Main Office" address in Coloma, California, which is in the Eastern District. *See* Yang Decl. Exh. A, ECF 16-3.

In response, Plaintiffs present the declaration of Susan Britting, Sierra Forest Legacy's executive director. *See* Britting Decl. ¶ 2, ECF 36-8. Ms. Britting states that "[a]s a fiscally sponsored project of the Tides Center, Legacy operates under the tax identification number for Tides Center." *Id.* ¶ 4. "All projects that are part of Tides Center are approved by its Board of Directors and are considered direct corporate activities." *Id.* According to Ms. Britting, "[t]here is

no legal distinction between Legacy and Tides Center." *Id.* With respect to Defendants' citations to complaints in prior actions, Ms. Britting explains that prior to 2011, Legacy was a fiscally sponsored project of Friends of the River ("FOR"), and was considered one organization under FOR's tax identification number. *See id.* ¶ 3. FOR is based in Sacramento, California, in the Eastern District. *See id.* Thus in pre-2011 lawsuits, Sierra Forest Legacy identified itself as a resident of the Eastern District. In 2011, however, Sierra Forest Legacy became a fiscally sponsored project of the San Francisco-based non-profit Tides Center. *See id.* With respect to a 2017 complaint cited by Defendants and referring to Sierra Forest Legacy as a resident of the Eastern District, Ms. Britting states that Sierra Forest Legacy was not a resident of the Eastern District at that time and that the suit was filed in the Eastern District because the grazing activities at issue occurred entirely in the Eastern District. *Id.* ¶ 7.

It is not clear on this record whether Sierra Forest Legacy is a resident of the Northern District for purposes of § 1404(a) analysis. While the evidence submitted by Plaintiffs certainly suggests that Sierra Forest Legacy may be considered the same entity as Tides Center, Plaintiffs have not cited any case authority holding that a fiscal relationship such as that described is sufficient to confer Tides Center's residency on Sierra Forest Legacy. As Defendants point out, Sierra Forest Legacy's website lists a main office address in the Eastern District.

Even if Sierra Forest Legacy is not a resident, however, Plaintiffs' evidence establishes a significant connection between Sierra Forest Legacy and the Northern District such that it cannot be said that the "forum has no particular interest in the parties or the subject matter" of the litigation. *Pence*, 403 F.2d at 954. While Defendants cite a number of cases for the proposition that little deference is accorded a non-resident's choice of forum, the plaintiffs in those cases had *no* connection with the chosen forum. *See, e.g., Easton v. Wells Fargo & Co.*, No. 20-CV-02193-HSG, 2020 WL 3639934, at *3 (N.D. Cal. July 6, 2020) (named plaintiff in putative statewide class action did not reside in the forum and his relevant employment occurred outside the forum); *Sims v. United Parcel Serv., Inc.*, No. 19-CV-07551-RS, 2020 WL 2542622, at *7 (N.D. Cal. Jan. 13, 2020) (same). Those cases are distinguishable from the present case, in which Sierra Forest Legacy is closely connected with and funded by forum resident Tides Center with respect to

1   conservation efforts in the Northern District. At least one court in this district has recognized that
2   factors other than the plaintiff's residency may be considered when determining whether the
3   forum has the requisite "particular interest" in the parties, for example, whether non-resident
4   plaintiffs maintain offices in the forum and the residence of members of the plaintiff
5   organizations. *See Desert Survivors*, 2016 WL 3844332, at *9. Here, Plaintiffs present evidence
6   that Plaintiff Center for Biological Diversity has an office in the Northern District and all three
7   Plaintiffs have members who reside in the Northern District and are concerned about the
8   California spotted owl population in Monterey County, which lies in the Northern District. *See*
9   Greenwald Decl. ¶¶ 5-6, 10, ECF 32-11.

10   After considering the parties' evidence and the relevant legal authorities, the Court finds
11   that Defendants have not shown that the Northern District has no particular interest in the parties
12   or the subject matter of this suit such that Plaintiffs' choice of forum should be discounted in the
13   § 1404(a) analysis.

### ii. Operative Facts Occurring in Northern District

15   In environmental actions, operative facts include where the species at issue is found, where
16   the challenged decision was made, where the legal challenge was developed, and where related
17   litigation occurred. *See Desert Survivors*, 2016 WL 3844332, at *8. Defendants focus on where
18   the challenged decision was made, presenting evidence that the decision-making process occurred
19   in the Eastern District. *See* Drake Decl. ¶ 3, ECF 16-1. Plaintiffs do not dispute that the
20   challenged decision was made in the Eastern District, instead arguing that operative facts also
21   exist in the Northern District because the California spotted owl is found in the Northern District.
22   "A forum has a sufficient connection with a challenged FWS decision that will directly impact the
23   region in a manner beyond that of a broad, general concern for endangered species."[1] *Forest*
24   *Guardians v. Kempthorne*, No. 06-CV02560-L(LSP), 2007 WL 2572287, at *2 (S.D. Cal. Sept. 5,
25   2007). Further, a forum "has a particular interest in the protection of wildlife living in within its
26   boundaries." *Id*.

---

[1] As used in *Forest Guardians*, "FWS" refers to the U.S. Fish & Wildlife Service. *See Forest Guardians*, 2007 WL 2572287, at *1.

1    Defendants do not dispute that the California spotted owl's range includes Monterey
2    County, which is located in the Northern District, and that the outcome of this litigation will affect
3    the Monterey County population. *See* Mot. to Transfer at 6, ECF 16. Instead, Defendants argue
4    that the presence of the California spotted owl in the Northern District should not be given
5    significant weight because only 2% of the California spotted owl's entire range is in Monterey
6    County, and only 0.6 % of the total occurrences of the species is in Monterey County. *See* Drake
7    Decl. ¶ 5, ECF 16-1. Plaintiffs contend that Defendants' statistics only underscore the importance
8    of this case to the Northern District. Plaintiffs present evidence that the coastal California portion
9    of the California spotted owl is critical to the long-term survival of the species overall. *See*
10   Forsyth Decl. Exh. C at 27, ECF 36-4; Forsyth Decl. Exh. D at 17-19, ECF 36-5.

11   None of the cases cited by Defendants suggests that the presence of an asserted endangered
12   species in the forum may be discounted on a § 1404(a) analysis merely because a greater
13   percentage of the species occurs in the proposed alternative forum. For example, while
14   Defendants cite *Bay.org v. Zinke* for the proposition that the plaintiffs' choice of forum was
15   discounted because only 15% of the species' critical habitat was in the Northern District, the cited
16   language actually is drawn from the court's discussion of weight to be given each forum's local
17   interests. *See Bay.org v. Zinke*, No. 17-CV-03739-YGR, 2017 WL 3727467, at *4 (N.D. Cal.
18   Aug. 30, 2017). The 15% figure is not mentioned in the portion of the order discussing the weight
19   to be given the plaintiffs' choice of forum. *See id.* The *Zinke* court afforded the plaintiffs' choice
20   of forum only "some deference" because they had failed to show why transfer to the Eastern
21   district, where parallel litigation was proceeding, would lead to any substantial inconvenience.
22   *See id.* The district court also determined that the majority of the operative facts, as well as the
23   administrative record, were centered in the Eastern District. *See id.* The court's decision to give
24   less weight to the plaintiffs' choice of forum did not turn on the percentage of species found in the
25   competing districts. Similarly, in *Ecological Rts. Found. v. United States Env't Prot. Agency*, the
26   plaintiffs' choice of forum was discounted based on the courts' determination that "Plaintiffs
27   cannot and do not claim that the nationally applicable Rule, promulgated by the EPA in
28   Washington, DC, has any special effect in this district; citizens in every district are equally

8

affected by it." *Ecological Rts. Found. v. United States Env't Prot. Agency*, No. 19-CV-04242-RS, 2019 WL 5295124, at *3 (N.D. Cal. Oct. 18, 2019).

Given the presence of the California spotted owl in the Northern District, and Plaintiffs' evidence regarding the extremely high risk to the Monterey County portion of the coastal California spotted owl's population, the Court concludes that there are operative facts within Plaintiffs' chosen forum. That conclusion is bolstered by prior litigation regarding the California spotted owl in the Northern District. The present case follows prior rounds of litigation in this forum challenging the Service's delay in responding to, and ultimate denial of, a previous petition to add the California spotted owl to the federal list of endangered and threatened species. See Forsyth Decl. Exh. A, ECF 36-2; Forsyth Decl. Exh. B, ECF 36-3. That prior litigation constitutes a relevant operative fact. *See Desert Survivors*, 2016 WL 3844332, at *8.

This Court concludes that Defendants have not established an absence of operative facts occurring in the Northern District.

### iii. Plaintiffs' Choice of Forum is Entitled to Deference

Because Defendants have shown neither that this district has no particular interest in the parties or the subject matter, nor that all of the operative facts occurred outside this district, the Court finds that Plaintiffs' choice of forum is entitled to substantial deference. This factor therefore weighs heavily against transfer to the Eastern District. The Court's discussion of Plaintiffs' choice of forum encompassed the remaining *Jones* factors, the respective parties' contacts with the forum (factor 4) and the contacts relating to the plaintiff's cause of action in the chosen forum (factor 5). Accordingly, the Court turns to the additional factors often utilized by courts in this district, local interest in the controversy and relative court congestion.

### b. Local Interest

When determining whether a transfer of venue is appropriate, a court must consider "the local interest in having localized controversies decided at home." *Decker Coal*, 805 F.2d at 843. "In order to determine if a local interest exists in the transferee district in environmental cases, courts often look to the breadth of the challenged regulation and where the operative facts occurred." *Desert Survivors*, 2016 WL 3844332, at *10.

9

While the Court has found the existence of operative facts in the Northern District, such that it is not appropriate to discount Plaintiffs' choice of forum, the operative facts in the Eastern District arguably are more substantial. First, the challenged decision was reached in the Eastern District. While this fact is "not as relevant in the context of APA cases, which are mostly decided on the record," it does weigh toward finding a stronger local interest in the Eastern District. *See Zinke*, 2017 WL 3727467, at *4. Presumably, any agency witnesses likewise are located in the Eastern District. Moreover, while the Court has declined to discount Plaintiffs' choice of forum based on the small percentage of the California spotted owl found in the Northern District, that fact may be considered in determining the strength of each forum's local interest. *See id.* (finding that Eastern District had stronger local interest based in part on fact that "85% of smelt critical habitats that may be affected are within the Eastern District and only 15% in the Northern District").

The Court finds that this factor weighs in favor of transfer to the Eastern District.

### c.     Relative Court Congestion

Finally, the Court considers the relative congestion of the Northern District and the Eastern District. Defendants contend that there is no significant difference between the congestion of the two forums, and that if anything the Northern District is more congested than the Eastern District. In support, Defendants point to statistics from the Administrative Office of the United States Courts indicating that for the 12-month period ending June 30, 2020, the median time from filing to disposition for civil actions is slightly less in the Eastern District (9.6 months) than in the Northern District (10.1 months). *See* Yang Decl. Exh. I, ECF 16-11. "Courts may use the average time between filing and disposition or trial as a measure for court congestion." *Ctr. for Biological Diversity v. McCarthy*, No. 14-CV-05138-WHO, 2015 WL 1535594, at *5 (N.D. Cal. Apr. 6, 2015). Defendants also cite decisions transferring cases from the Northern District to the Eastern District. *See, e.g., Pit River Tribe v. Bureau of Land Mgmt.*, No. 19-CV-02002-PJH, 2019 WL 6341566, at *8 (N.D. Cal. Nov. 27, 2019).

In response, Plaintiffs assert that Defendants ignore the judicial crisis that is occurring in the Eastern District. Plaintiffs point out that the same statistics showing similar median times for

10

disposition of civil actions in the two forums also show that caseloads are significantly higher in the Eastern District (1,240 cases per judgeship) than in the Northern District (870 cases per judgeship). Plaintiffs also cite to comments of then-Chief Judge Lawrence O'Neill, describing the dire situation faced by the Eastern District bench resulting from the combination of an overwhelming workload and vacancies on the bench. *See* Forsyth Decl. Exh. E, ECF 32-6. Additionally, Plaintiffs direct the Court's attention to decisions acknowledging the crisis in the Eastern District. *See, e.g., Green Aire for Air Conditioning W.L.L. v. Salem*, No. 1:18-cv-00873-NONE-SKO, 2020 WL 4734909, at *7 (E.D. Cal. Aug. 14, 2020). Plaintiffs note that even the decisions cited by Defendants acknowledge that "the Eastern District is one of the most congested district courts across the country." *Pit River Tribe*, 2019 WL 6341566, at *8. In *Pitt River Tribe*, the district court found that "the Eastern District's caseload and associated congestion certainly cuts against transfer," but concluded that "such a factor is not enough to overcome the other factors which all weight in favor of transfer under the particular circumstances of this case." *Id*.

This Court likewise finds that the relative congestion of the Eastern District weighs against transfer.

### d. Conclusion

To summarize the Court's findings set forth above, Plaintiffs' choice of forum is entitled to substantial deference, which weighs against transfer to the Eastern District. The relative congestion of the Eastern District also weighs against transfer. The only factor that weighs in favor of transfer is the local interest of the Eastern District. The Court concludes that that interest, standing along, does not outweigh the other factors.

Accordingly, the motion to transfer is DENIED.

### III. MOTION TO INTERVENE

Non-party CORE moves to intervene in this action as of right pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, CORE seeks permissive intervention under Rule 24(b). The motion is not opposed by Plaintiffs or Defendants.

### A. Legal Standard

An applicant seeking to intervene as of right under Rule 24(a) must "make four showings

11

to qualify under this Rule: (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (quotation marks and citation omitted).

Even where intervention as of right is unavailable, courts may still permit intervention when the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

**B.     Discussion**

The Court has no difficulty in finding that CORE has satisfied the requirements for intervention as of right. CORE has a significant protectable interest in the outcome of the litigation, as its members own and/or operate land within the range of the California spotted owl (factor 1). *See* Gordon Decl. ¶¶ 6-9, ECF 25-2. If the Service's decision is vacated, CORE may be subject to new regulatory restrictions with respect to use of the land. Disposition of the present action without CORE's participation may impair CORE's ability to protect the interests of its members (factor 2). The motion to intervene is timely, as it was filed four months after the complaint was filed, the other parties have not objected or otherwise shown prejudice, and there has been no delay (factor 3). *See Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002) (setting forth factors relevant to timeliness). Finally, the existing parties may not adequately represent CORE's interests, as Plaintiffs' success may result in greater restrictions on CORE's members and Defendants' interest in defending its decision under the Endangered Species Act does not fully encompass CORE's interests (factor 4).

Plaintiffs and Defendants have filed briefs indicating that they take no position with respect to CORE's motion to intervene. In light of those filings and for the reasons discussed above, CORE's motion to intervene is GRANTED. Plaintiffs request that if the motion is granted, CORE be required to adhere to the case schedule set by the Court. Plaintiffs' request is reasonable and is granted. Having concluded that CORE is entitled to intervene as of right, the Court need not address CORE's alternative motion for permissive intervention.

12

CORE has identified its interests as aligned with Defendants to uphold the agency action. Mot. to Intervene at 9-10, ECF 25. As such, CORE and the other Defendants will be required to share page limitations on briefing as provided in the Northern District Local Rules and this judge's standing orders. Separate briefs may be filed by CORE and the named Defendants, but the total number of pages allowed for a particular matter will be strictly enforced. For example, under the district's local rules, summary judgment briefs are limited to 25 pages and thus the combined page limitation for CORE and the other Defendants on summary judgment will be 25 pages.

**IV.  ORDER**

(1) Defendants' motion to transfer venue is DENIED.

(2) CORE's motion to intervene is GRANTED. CORE SHALL attend the Case Management Conference set on June 10, 2021 at 11:00 a.m.

(3) This order terminates ECF 16 and 25.

Dated:  June 9, 2021

_____
BETH LABSON FREEMAN
United States District Judge